UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BALLANTYNE T.,[1]

                              Plaintiff,

                -v-

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  2/19/2025

**MEMORANDUM
AND ORDER**

23-CV-11182 (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

Plaintiff Ballantyne T. ("Plaintiff") brings this action pursuant to 42 U.S.C.

§ 405(g) to obtain judicial review of the final decision of the Commissioner of Social

Security ("Commissioner") denying his claim for Disability Insurance Benefits

("DIB") under the Social Security Act (the "Act").  Plaintiff has moved for judgment

on the pleadings pursuant to Fed. R. Civ. P. 12(c).  ECF No. 14.  The parties

consented to proceeding before the undersigned for all purposes pursuant to 28

U.S.C. § 636(c).  For the reasons stated below, Plaintiff's motion is **GRANTED** and

the case is **REMANDED** for further proceedings.

I.    BACKGROUND

      A.    **Procedural Background**

Plaintiff applied for DIB on January 26, 2021, *see* Certified Administrative

Record, ECF No. 9 (hereinafter, "R. __") 283–84, asserting disability since June 7,

---

[1] To preserve his privacy, the plaintiff is referred to by his first name and the first
initial of his last name.

1

2005, due to high blood pressure, gout, sickle cell trait, prostate issues, urine retention issues, back pain, borderline diabetes, and weakness on the entire left side of the body. *Id.* at 21. His date last insured ("DLI") was March 31, 2013.[2] *Id.* at 18. His application was denied initially on May 4, 2021, *id.* at 135–42, and again upon reconsideration on December 20, 2021. *Id.* at 151–56. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 28, 2022, before ALJ Vincent Cascio. *Id.* at 53–70. The record of this hearing was held open, and a supplemental hearing before ALJ Cascio was held on November 22, 2022. *Id.* at 32–52. Plaintiff appeared and testified at both hearings in-person, accompanied by counsel. Medical expert Steven Goldstein, MD also appeared and testified by telephone at the supplemental hearing. *Id.* at 33. In a written decision dated December 1, 2022, ALJ Cascio determined that Plaintiff was not disabled within the meaning of the Act between June 7, 2005 and March 31, 2013 (the "Relevant Period"). *Id.* at 17–24. On October 30, 2023, the Appeals Council denied review, *id.* at 1–3, rendering the ALJ's determination final. This action followed.

---

[2] The ALJ found that Plaintiff's earnings records show that he worked and earned qualifying coverage through the first quarter of 2013. R. 18. Therefore, Plaintiff's date last insured is March 31, 2013. To be entitled to DIB, Plaintiff must establish disability on or before his date last insured.

### B.    Medical Evidence

#### 1.    Evidence Related to Physical Health Conditions

Beginning in April 2005, Plaintiff was treated by Dr. Randall Owen for resection of a tumor in his left neck and chest, diagnosed as fibromatosis.[3]  *Id.* at 1964.  Plaintiff underwent surgery on June 9, 2005, and remained in the hospital for recovery through June 16, 2005.  *Id.* at 1963.  Plaintiff also saw Dr. Owen for follow-up evaluations, for which medical records from 2009 through 2019 are in the administrative record.

In a letter dated July 13, 2005, a little over a month after the June 9 surgery, Dr. Owen wrote that Plaintiff underwent surgery to remove a "massive tumor of the left neck and chest" that "was pressing on the nerves of his neck giving rise to weakness of the left arm."  *Id.* at 1966.  Dr. Owen reported that Plaintiff remained "significantly weak in the left arm" and "suffered a pulmonary embolism" treated with anticoagulant medication.  *Id.*  He concluded that Plaintiff was "in no condition to continue working in a job which requires physical labor at this time, and for some time to come."  *Id.*

In January 2006, Plaintiff was referred to radiation therapy to treat recurrent growth on the left neck.  *Id.* at 1981.  Consultation notes dated January 24, 2006 reflect that Plaintiff complained of "loss of abduction of the left shoulder

---

[3] Fibromatosis is a condition in which connective tissue overgrowth develops into tumors, which are typically benign.  *Fibromatosis*, DermNet, https://dermnetnz.org/topics/fibromatosis (last visited Feb. 18, 2025).  Fibromatosis tumors may be treated by resection, or surgical removal, of the mass.

3

beyond 90 degrees" but had no complaints of tingling, weakness, or numbness, and upon examination had "power of 5/5 both upper extremities." *Id.* On May 3, 2007, Dr. Garg, a radiation oncologist, reported that Plaintiff had completed 31 of the 33 scheduled radiation treatments between February 6, 2006 and April 6, 2006. *Id.* at 1984.

On May 7, 2007, Dr. Owen wrote that Plaintiff's tumor was "very unusual" and "was pressing on the nerves of his neck giving rise to partial pariliazation [sic] of the left arm." *Id.* at 1986. He further stated that Plaintiff "remain[ed] significantly weak in the left arm to the present day." *Id.* Dr. Owen again opined that Plaintiff was "in no condition to continue working in a job, which requires physical labor at this time, and for some time to come." *Id.*

On August 30, 2007, Dr. Miller, a neurologist, saw Plaintiff and reported that he had "weakness of the muscles in the proximal left arm." *Id.* at 1987. Dr. Miller opined that "[p]rognosis for full recovery is guarded." *Id.*

In May 2008, Dr. Owen completed an evaluation form for a private disability carrier. *Id.* at 1963. Dr. Owen reported that Plaintiff experienced limited left arm mobility and pain, which was treated by physical therapy. *Id.* In response to the question of whether part time work was appropriate, or if work accommodations were necessary, Dr. Owen responded, "yes," with no further explanation. *Id.*

On April 15, 2009, Dr. Owen described the results of the tumor resection, reporting that the surgery left Plaintiff with "some weakness of the left shoulder

and arm." *Id.* at 1989.  Dr. Owen further reported that the "treatment is ongoing physical therapy." *Id.*

On November 5, 2009, Dr. Owen's treatment notes reflected that, after receiving radiation therapy to treat a developing neck tumor recurrence, Plaintiff "remained without evidence of disease." *Id.* at 395.  These notes also stated that Plaintiff had "significant difficulties with his left arm ever since the surgery" but that physical therapy seems to help, though Plaintiff had not worked with a physical therapist "for some time." *Id.*  The only complaint by Plaintiff was an inability to raise the left arm above 90 degrees, and Dr. Owen noted that there were "no other complaints or symptoms" and that based on a physical examination, he "detect[ed] no evidence of disease" *Id.*

On April 16, 2010, Dr. Owen's treatment notes indicated that Plaintiff had no new symptoms and was moving his left arm "fairly well" with "still some limited mobility." *Id.* at 394.

On July 14, 2011, Dr. Owen's treatment notes reflected that, although Plaintiff reported "some pain in the neck with movement," he had "good mobility of the neck and arm" and Dr. Owen could "see no evidence of disease." *Id.* at 393–94.

On November 16, 2012, Dr. Owen wrote a letter stating that Plaintiff "remains significantly weak in the left arm" as a result of the June 2005 surgery. *Id.* at 1992.  Further, Dr. Owen reported that Plaintiff suffered a pulmonary embolism after the surgery, which was treated by anticoagulant medication. *Id.*

The administrative record includes other treatment notes from Dr. Owen after the Relevant Period.  Additional scans taken in 2013 and 2016 to determine whether disease recurred in the neck and chest returned negative.  *Id.* at 389, 391. These later treatment notes also reflected that, despite complaints of "mild tenderness" in the neck, Plaintiff continued to have "good mobility."  *Id.* at 387–88.

In February 2021, Plaintiff attended an internal medicine examination pursuant to a referral by the New York State Division of Disability Determination. *Id.* at 422.  Upon physical examination, Dr. Julia Kaci observed that Plaintiff had a normal gait and stance, used no assistive devices, could walk on his heels and toes without difficulty, and could squat fully though he needed to hold on to the exam table to stand up again.  *Id.* at 423.  Dr. Kaci also noted that there was decreased sensation on Plaintiff's left side, but strength was "4+/5 in the right upper extremity, 3/5 in the left upper extremity" and hand and finger dexterity were intact.  *Id.* at 424.  Based on Plaintiff's medical history and exam, Dr. Kaci concluded that he had "marked limitations to lifting, carrying, pushing, pulling, and reaching above head with the left shoulder;" "[m]oderate limitations to prolonged walking, climbing stairs, and prolonged standing;" and "[m]ild limitations to prolonged sitting, squatting, and kneeling."  *Id.* at 425.

In April 2021, Dr. Periakaruppan, a State agency medical consultant, reviewed Plaintiff's medical records and made an initial determination that there was insufficient evidence to evaluate Plaintiff's DIB claim.  *Id.* at 71–78.

In October 2021, Dr. Porcelli, a State agency medical consultant, reviewed Plaintiff's medical records at the reconsideration level and found him disabled with an onset date of January 26, 2021, nearly eight years after the DLI. *Id.* at 92–114.

In December 2021, Dr. Vinluan, another State agency medical consultant, reviewed Plaintiff's medical records and determined that Plaintiff was not disabled given his age, education, and RFC. *Id.* at 79–91. Dr. Vinluan noted that Plaintiff "does not need help at home. He does cooking, cleaning, laundry, and shopping as needed," does not have childcare, and "showers and dresses himself." *Id.* at 87.

Also in December 2021, Dr. Naroditsky, another State agency medical consultant, reviewed Plaintiff's medical records at the reconsideration level and concluded that there was insufficient evidence prior to the DLI on which to determine the DIB claim, thereby affirming the initial determination that Plaintiff was not disabled. *Id.* at 115–33.

Additionally, Plaintiff saw Dr. Healy of Industrial Medicine Associates, P.C. for an internal medicine examination referred by the New York State Division of Disability Determination in December 2021. Dr. Healy noted that Plaintiff "cannot cook" but "can be directed to clean," and "needs help doing laundry and shopping," but "can shower and dress himself." *Id.* at 1553. Upon physical examination, Dr. Healy found that Plaintiff had full range of motion of his shoulders, elbows, forearms, wrists, and fingers bilaterally, and retained his hand and finger dexterity. *Id.* at 1555. Further, Dr. Healy determined that, at the time of the consultative

7

examination, Plaintiff had "moderate to marked limitations standing, walking, and climbing stairs." *Id.*

### 2.    Evidence Related to Mental Health Conditions

Plaintiff was admitted to Westchester Medical Center's Behavioral Health Center on December 14, 2012, and discharged on December 17, 2012. *Id.* at 1959. The discharge paperwork reflects that Plaintiff was diagnosed with depressive disorder and prescribed treating medication. *Id.* at 1959–60. The discharge paperwork also reflects that Plaintiff was instructed to follow a "no salt" diet and to follow up with his psychiatrist and internist. *Id.* at 1959. The discharging practitioner also indicated that Plaintiff could return to "regular" activity. *Id.*

### C.    Hearing

On July 28, 2022, the ALJ held a hearing on Plaintiff's claim for DIB. During the hearing, Plaintiff testified that he had a tumor in his neck that extended down to his chest on the left side, which was partially removed. *Id.* at 60–61. Plaintiff testified that the tumor made him weak and unable to lift any weight, both before and after the partial removal. *Id.* at 61. Further, Plaintiff testified that during the Relevant Period, he needed and received help with daily activities from Ms. Keisha Patterson and her mother. *Id.* at 62. Plaintiff also testified that he as unable to sit or stand for a long time. *Id.* at 64–66. The ALJ asked about medical records indicating Plaintiff chipped a tooth while playing basketball in 2016, *id.* at 59, but had no further questions for Plaintiff in this hearing. *Id.* at 68.

During the hearing, Plaintiff's counsel acknowledged that "the vast majority" of the evidence in the record that supported a finding of disability was from the strokes that occurred after the Relevant Period. *Id.* at 58. The ALJ left the record open to provide time for Plaintiff's counsel to search for additional medical records to support the DIB claim and to "make sure the record is complete." *Id.* at 68.

On November 22, 2022, the ALJ held a supplemental hearing to consider the additional evidence submitted by Plaintiff from the Relevant Period and to hear an impartial medical expert's opinion considering that additional evidence.

The medical expert, Dr. Steven Goldstein, testified that he had reviewed the medical evidence of record in this case, including the newly submitted evidence from the Relevant Period, and was able to render a medical opinion on that basis. *Id.* at 40. Dr. Goldstein noted that, during the Relevant Period, Plaintiff had a benign tumor on his neck "that would not be a severe impairment in the Social Security sense." *Id.* at 42. While Dr. Goldstein mentioned certain impairments that existed in the medical records post-dating the Relevant Period, he noted no conditions in the Relevant Period that would limit Plaintiff's functionality. *Id.* at 43. On cross examination, Dr. Goldstein testified that he did not see any lasting deficits due to the tumor in Plaintiff's medical records.

Plaintiff presented a witness, Ms. Keisha Patterson, who testified about his deficits during the Relevant Period. Ms. Patterson explained that in 2013, Plaintiff required daily assistance due to mobility issues. *Id.* at 46. She testified that Plaintiff had physical therapy "that he did every now and then, but it was kind of

hard to get him to do all that because he didn't have the energy." *Id.* Ms. Patterson further testified that Plaintiff was unable to stand or sit for long periods of time before he had to lay down. *Id.* at 47. Finally, Ms. Patterson testified that Plaintiff did not cook or do laundry but was able to make his bed. *Id.*

### D. The ALJ's Decision

On December 1, 2022, the ALJ issued his decision, finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act within the Relevant Period. *Id.* at 14–24. Before undertaking the five-step analysis mandated by 20 C.F.R. § 404.1520(a)(4)(i)–(v), the ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2013. *Id.* at 18, 20.

At step one of the five-step analysis, *see* 20 C.F.R. § 404.1520(a)(4)(i), the ALJ found that Plaintiff had not engaged in substantial gainful activity between June 7, 2005 and March 31, 2013. R. 20.

At step two, *see* 20 C.F.R. § 404.1520(a)(4)(ii), the ALJ found that, during the Relevant Period, Plaintiff had three medically determinable impairments: fibromatosis, hypertension, and depressive disorder. R. 20. However, the ALJ found that these impairments were not "severe" because none of them, independently or in combination, significantly limited his ability to perform basic work-related activities for twelve consecutive months. *Id.* In reaching this conclusion, the ALJ first considered whether Plaintiff had an underlying medically determinable physical or mental impairment that could reasonably be expected to produce his pain or other symptoms and, second, evaluated the intensity,

10

persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limited his work-related activities.  *Id*. at 21.

The ALJ considered the treatment notes in the record that showed Plaintiff had a history of fibromatosis that resulted in a soft tissue mass, which was treated by surgery, and a recurrence over a year later that was treated by radiation therapy.  *Id*.  The ALJ found that the treatment notes after that point revealed no subsequent evidence of disease and showed some limited left arm mobility that was noted to improve with physical therapy, but that Plaintiff did not regularly treat with physical therapy.  *Id*.  He also noted that Plaintiff was on various medications for hypertension, depression, and anxiety.  *Id*. at 21–22.  The ALJ found that the medically determinable impairments in the record could have reasonably been expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the evidence because Plaintiff's medical records revealed that he had only intermittent treatment, limited complaints, and largely normal clinical exams.  *Id*. at 22.

Additionally, the ALJ considered Dr. Goldstein's expert testimony that the medical records pre-dating the DLI did not show any impairments that would meet the twelve-month durational requirement, and therefore did not show any "severe" impairments.  *Id*.  The ALJ also considered the reports of State agency medical consultants, Drs. Periakaruppan and Naroditsky, concluding that there was insufficient evidence prior to the DLI to evaluate Plaintiff's claim.  Additionally, the

ALJ considered Dr. Owen's opinion, expressed on a private disability insurance form, that Plaintiff was prevented from returning to work due to limited left arm motion and pain, that he required part-time work or work accommodations, and that Plaintiff could not work in a job that required physical labor. The ALJ discounted Dr. Owen's opinion as conclusory and vague. *Id.* at 23. Finally, the ALJ noted that there were various categories of evidence that were neither persuasive nor relevant because they included medical opinions prepared based on exams or treatment after the Relevant Period or did not contain a medical opinion at all. *Id.*

Based on the foregoing, the ALJ found that Plaintiff did not have a severe impairment during the Relevant Period. The ALJ therefore ended his analysis after step two and concluded that Plaintiff was not under a disability, as defined in the Act, at any time during the Relevant Period. *Id.*

## II.    DISCUSSION

Plaintiff challenges the ALJ's ruling on the following grounds: (1) the ALJ failed to develop the record; (2) the ALJ did not properly assess the medical evidence; and (3) the ALJ's decision was not supported by substantial evidence.

### A.    Legal Standards

#### 1.    Standard of Review

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (cleaned up). When "the ALJ has

12

applied an improper legal standard," or when there is not substantial evidence to support the ALJ's determination, the reviewing court may remand to the ALJ. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

"Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). The Commissioner's findings as to any fact supported by substantial evidence are conclusive. *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (cleaned up)). Thus, if sufficient evidence supports the ALJ's final decision, the Court must grant judgment in favor of the Commissioner, even if substantial evidence also supports the plaintiff's position. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." (emphasis in original) (cleaned up)). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded to the Commissioner's decision." *Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (cleaned up).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."

*Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (cleaned up). Courts review de novo whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (reversing where the court could not determine whether the ALJ applied the correct legal principles in assessing plaintiff's eligibility for disability benefits); *Thomas v. Astrue*, 674 F. Supp. 2d 507, 515, 520 (S.D.N.Y. 2009) (reversing for legal error after de novo consideration). A court may not defer to an ALJ's determination that is the product of legal error, including a failure to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based." 42 U.S.C. § 405(b)(1); *see Cullen v. Kijakazi*, No. 23-CV-1960, 2024 WL 564501, at *2 (S.D.N.Y. Feb. 9, 2024), *adopted by* 2024 WL 1158455 (S.D.N.Y. Mar. 18, 2024).

## 2. Standard Governing Evaluations of Disability Claims by the Agency

The Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

14

An ALJ must proceed through a five-step analysis to make a disability determination.  *See* 20 C.F.R. § 404.1520.  A claimant bears the burden of proof as to steps one through four; the Commissioner bears the burden as to step five. *Selian*, 708 F.3d at 418.  "The steps are followed in order: if it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not progress to the next step."  *Martinez v. Comm'r of Soc. Sec.*, No. 18-CV-580, 2019 WL 1331399, at *2 (S.D.N.Y. Mar. 15, 2019).

First, the claimant must prove he is not currently engaged in substantial gainful activity.  Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ." At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1.  Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.  If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove—considering claimant's residual functional capacity, age, education, and past work experience—that the claimant is capable of performing other work.  If the Commissioner proves other work exists that the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.

### B.    The ALJ Adequately Discharged His Duty to Develop the Record

Plaintiff challenges the ALJ's determination on the grounds that he failed to develop the record.  "Whether the ALJ has met his duty to develop the record is a threshold question" which the Court must determine "[b]efore reviewing whether the Commissioner's final decision is supported by substantial evidence." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016).  "The social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up).

The applicable regulations provide that the SSA "will develop [claimant's] complete medical history" for the period preceding the month that a benefits application is filed or an earlier period if necessary, using "every reasonable effort." 20 C.F.R. § 404.1512(b).  "The ALJ's obligation to assist the claimant in assembling [their] medical records, although robust, is not unlimited." *Fletcher v. Comm'r of Soc. Sec.*, No. 22-CV-2873, 2023 U.S. Dist. LEXIS 170780, at *34 (S.D.N.Y. Sept. 22, 2023) (cleaned up).  Ultimately, it is the claimant's duty and burden to prove that they are disabled in the period for which benefits are sought.  20 C.F.R. § 404.1512(a); *Holly P. v. Comm'r of Soc. Sec.*, No. 20-CV-1611, 2022 WL 2872650, at *3 (W.D.N.Y. July 21, 2022).

Where, as here, the claimant was represented by counsel before the agency, "the ALJ may satisfy the duty to develop the record by relying on the claimant's counsel to obtain additional medical documentation." *Myers ex rel. C.N. v. Astrue*,

16

993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012); *see also Martin v. Saul*, No. 18-CV-1478,

2020 WL 5096057, at *4 (W.D.N.Y. Aug. 28, 2020) (in a counseled case, the ALJ

satisfied her duty "by holding the record open after the hearing to permit the

submission of additional evidence"); *Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x

542, 543 (2d Cir. 2005) (summary order) (the ALJ "fulfilled his duty to develop the

administrative record" where plaintiff's counsel volunteered to secure missing

records from treating physician; ALJ held the record open to allow him to do so; and

counsel never requested further assistance from the ALJ).

If there are no obvious gaps in the administrative record or if the ALJ can

determine whether the claimant is disabled based on the evidence in the

administrative record notwithstanding any inconsistent evidence, "the ALJ is under

no obligation to seek additional information in advance of rejecting a benefits

claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (cleaned up); *see also* 20

C.F.R. § 404.1520b(b).

In this case, Plaintiff does not challenge the quality or quantity of objective

medical evidence and treatment notes that are in the record.  Nor does Plaintiff

indicate that there was any additional medical documentation in existence that the

ALJ could have sought.  In fact, the ALJ had over two thousand pages of objective

medical evidence, treatment notes, opinion evidence, and other documents in the

record before him.  *See* ECF No. 9.

Instead, Plaintiff argues that "the ALJ should have . . . reconnected with Dr.

Owen to clarify his opinion."  ECF No. 15 at 18.  In effect, Plaintiff argues that the

17

ALJ needed to solicit a new opinion from Dr. Owen, nearly ten years after the Relevant Period closed. This argument is without merit. The regulations provide that the ALJ will attempt to determine whether the claimant is disabled based on the relevant evidence in the administrative record. 20 C.F.R. § 404.1520b(b)(1). If the ALJ concludes that he cannot determine whether the claimant is disabled based on the existing record, the ALJ *may* take additional action, including recontacting the claimant's medical source or requesting additional existing evidence. *Id.* § 404.1520b(b)(2) (emphasis added). Although the ALJ found Dr. Owen's opinions "conclusory and vague," the regulations do not require the ALJ to take any additional action when a disability determination can be made based on the evidence in the record. *See id.* § 404.1520b(b). The ALJ was not required to contact Dr. Owen simply because he found Dr. Owen's opinion insufficient. *See, Evans v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 538 (S.D.N.Y. 2015) ("Evans's argument boils down to the proposition that an ALJ must contact a treating source before choosing to reject that source's assessment of a claimant's functional capacity. We find no warrant for such a rule in the governing regulations or case law, however.").

Further, Plaintiff's counsel never requested the ALJ's assistance in obtaining additional evidence from Dr. Owen or from any other source. To the contrary, Plaintiff's counsel informed the ALJ at the July 28 hearing that he was not aware of any additional records related to Plaintiff's claimed impairment from the Relevant Period. R. 66–67. Despite this statement, the ALJ agreed to hold the record open for thirty days so that counsel could search for and provide any additional relevant

18

records. *Id.* at 67–68. Thereafter, Plaintiff's counsel did locate and submit additional evidence, which the ALJ entered into evidence as Exhibits 54F–58F, despite it being submitted less than five business days before the scheduled hearing date. *Id.* at 17–18.

The ALJ then held a supplemental hearing on November 22, 2022, so that an impartial medical expert could provide testimony after considering the newly submitted evidence. *Id.* at 17. There is no indication that Plaintiff's counsel contacted Dr. Owen for a new, clarified, or revised opinion or requested the ALJ's assistance in doing so. Further, even if Dr. Owen were available or willing to provide an opinion in 2022, that opinion would come nearly ten years after the DLI and three years after the record indicates Dr. Owen last treated Plaintiff, and thus would be unlikely to yield any useful evidence related to Plaintiff's impairments during the Relevant Period. The record before the ALJ already included Dr. Owen's contemporaneous treatment notes and opinions from March 2005 through June 2019. *Id.* at 386–412, 1962–2003.

In any event, the ALJ's obligation is to develop the record when the evidence therein is incomplete, and not merely when there may be inconsistencies in the record. *Evans*, 110 F. Supp. 3d at 537–38. The ALJ fulfilled this obligation to develop the record by holding the record open after the July 28 hearing, and Plaintiff's counsel neither requested assistance in obtaining additional documents or indicated that any documentation was missing. *See, e.g.*, *Moody v. Comm'r of Soc. Sec.*, 848 F. App'x 470, 471 (2d Cir. 2021) (ALJ adequately developed the record

19

by holding the record open for supplemental documents and counsel did not state there were any outstanding documents); *Curley v. Comm'r of Soc. Sec.*, 808 F. App'x 41, 44 (2d Cir. 2020) (ALJ adequately developed the record by asking counsel if anything was missing from the record); *Jordan*, 142 F. App'x at 543 (ALJ adequately developed the record by holding the record open for counsel to submit additional evidence, claimant did not request ALJ's assistance in obtaining evidence, and counsel informed ALJ there was nothing more to add).

### C.    The ALJ's Failure to Properly Assess the Medical Opinions Warrants Remand

Plaintiff next asserts that the ALJ did not properly consider and assess the persuasiveness of opinions rendered by Dr. Owen, Plaintiff's treating physician, Dr. Goldstein, the impartial medical expert who testified at the November 22, 2022, supplemental hearing, and Dr. Kaci, the consultative examiner who assessed Plaintiff in 2021.

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence.  The revised regulations apply to claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits in 2021, the new regulations apply here.

Under the new regulations, the ALJ considers all medical opinions and evaluates their persuasiveness based on their supportability, consistency, relationship with claimant, specialization, and other factors.  *See id.* § 404.1520c(a)–(c).  The ALJ is required to "articulate how [he] considered the medical opinions"

and state "how persuasive" the medical opinions are determined to be, with a specific explanation of the supportability and consistency factors. *See id.* § 404.1520c(a)–(b); *see Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("[I]n cases where the new regulations apply, an ALJ *must* explain his/her approach with respect to the first two factors when considering a medical opinion . . . ."), *adopted by* 2021 WL 2801138 (S.D.N.Y. July 6, 2021).

"Supportability refers to the extent to which a medical source opinion is supported by objective medical evidence and the medical source's explanations." 20 C.F.R. § 404.1520c(c)(1). "Supportability is an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion." *Vellone*, 2021 WL 319354, at *6 (cleaned up). An ALJ's analysis of supportability is insufficient if there is no specific explanation of how the medical sources supported their own opinions.

"Consistency refers to the extent to which a medical source's opinion is consistent with other medical or non-medical sources." 20 C.F.R. § 404.1520c(c)(2). "Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Vellone*, 2021 WL 319354, at *6 (cleaned up). An ALJ's analysis of the consistency factor is insufficient when the assessment "ignores or mischaracterized medical evidence or cherry-picks evidence that supports [the ALJ's] RFC determination while ignoring other evidence to the contrary." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. Mar. 3, 2022)

(citing *Velasquez v. Kijakazi*, No. 19-CV-9303, 2021 WL 4392986, at \*27 (S.D.N.Y. Sept. 24, 2021)).

An ALJ's failure to properly consider and apply the requisite factors for evaluating medical source opinions is grounds for remand. *See, e.g.*, *Balotti*, 605 F. Supp. 3d 610, 622 (S.D.N.Y. June 6, 2022) (remanding so that ALJ can "separately discuss supportability and consistency"); *Rivera v. Comm'r of Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at \*22 (S.D.N.Y. Dec. 30, 2020) (remanding so that ALJ may "reevaluate the persuasiveness assigned to the opinion evidence of record and explicitly discuss both the supportability and the consistency of the consulting examiner's opinions"), *adopted by* 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *Andrew G. v. Comm'r of Soc. Sec.*, No. 19-CV-942, 2020 WL 5848776, at \*6–7 (N.D.N.Y. Oct. 1, 2020) (remanding due to ALJ's failure to adequately explain the supportability or consistency factors that led her to her decision).

First, the ALJ found Dr. Goldstein's opinion to be persuasive because it was "based upon a thorough review of all medical evidence and supported by his testimony." R. 22–23. This conclusory statement provides no meaningful basis from which the Court can assess how the supportability and consistency factors were assessed. The ALJ's explanation of the supportability and consistency factors and how they inform his conclusions regarding persuasiveness "may not be *pro forma*, rote, or conclusory but rather must contain sufficient factual detail taken from the record along with an adequate, logical explanation." *Glenn G. v. Kijakazi*, No. 22-CV-824, 2023 WL 2477501, at \*12 (D. Conn. Mar. 13, 2023). Here, the

statement that Dr. Goldstein's opinion is "supported by his testimony" is circular because the only articulation of Dr. Goldstein's opinion was his testimony.  There is no explanation of *how* Dr. Goldstein's opinion was supported either by his testimony or by any other evidence.  While the ALJ concluded that Dr. Goldstein's opinion was "based on" a thorough review of "all medical evidence," there is no explanation of how it was consistent with such medical evidence.

Next, the ALJ determined that Dr. Owen's opinions were not persuasive because they opined on the ability to work, "an issue reserved to the Commissioner[.]"  R. 23.  Specifically, the ALJ found that Dr. Owen's response to certain questions posed by a disability insurer (*i.e.*, "Is part-time work appropriate? Are work accommodations necessary?") was conclusory and vague because it lacked "any further explanation."  *Id.*  The ALJ also determined that Dr. Owen's statements in certain letters that Plaintiff was "certainly in no condition to continue working in a job which requires physical labor at this time, and for some time to come," were conclusory and vague.  *Id.*  The ALJ properly determined that Dr. Owen's conclusions regarding Plaintiff's ability to work were not persuasive because such statements addressed ultimate issues reserved to the Commissioner pursuant to Section 404.1520b(c)(3)(i).  Evidence of this nature is considered inherently neither valuable nor persuasive and need not be analyzed in the ALJ's decision.  20 C.F.R. § 404.1520b(c).  However, the ALJ failed to address, much less analyze the consistency and supportability of, the substance of Dr. Owen's opinions regarding the nature and extent of Plaintiff's alleged impairment, including his recurring

references to weakness and pain in Plaintiff's left shoulder and arm. In short, the

ALJ rejected all opinions by Dr. Owens, who had a longstanding examining

relationship with Plaintiff, because he also provided certain statements in the form

of ultimate conclusions that are reserved for the Commissioner.

Finally, the ALJ concluded that Dr. Kaci's opinion was not persuasive

because it was "prepared based on exams or treatment after the date last insured"

and was therefore irrelevant to the period at issue. R. 23. However, a claimant

may be able to demonstrate that he was continuously disabled with records from

before and after the Relevant Period if those records "actually shed light on

[claimant's] condition during that period." *Clark v. Saul*, 444 F. Supp. 3d 607, 621

(S.D.N.Y. Mar. 13, 2020). Here, the ALJ did not undertake any analysis of whether

the post-Relevant Period records shed light on Plaintiff's condition during the

Relevant Period. Dr. Kaci found there were "marked limitations" to functions with

Plaintiff's left shoulder, which was arguably consistent with Dr. Owen's conclusions

during the Relevant Period. Nor did the ALJ undertake any analysis of the

consistency and supportability factors with regard to Dr. Kaci's medical opinions.

Because the ALJ failed to adequately evaluate the opinion evidence in this

record, specifically by failing to explain his analysis of the supportability and

consistency factors, this action must be remanded for further proceedings in

accordance with the revised regulations. *See Balotti*, 605 F. Supp. 3d at 621 ("The

ALJ failed to [explain the analysis of the supportability and consistency factors] in

the instant case. That is not to say the ALJ necessarily reached a wrong result. It

may well be that on remand the ALJ comes to the same determination. But the Court can neither assume that will be so, nor endorse error in applying the revised framework for evaluating medical source opinions.") Therefore, the Court does not address the question of whether the ALJ's conclusion, reached by legal error, is supported by substantial evidence.

## III.    CONCLUSION

For the reasons stated above, pursuant to sentence four of 42 U.S.C. § 405(g), Plaintiff's motion for judgment on the pleadings is **GRANTED**, and this case shall be **REMANDED** for further proceedings.

**SO ORDERED.**

Dated: February 19, 2025
New York, New York

Henry J. Ricardo
United States Magistrate Judge